## Peter Arnold *versus* John Cessna.

A joint purchase of land by two persons, by articles of agreement, vests in them an equitable title to the land, as tenants in common, with a right to demand a conveyance of the legal title, upon payment of the purchase-money.

In such case, parol evidence is not admissible to show that one of the parties signed the agreement as surety for the other; because, 1st. It would contradict the written instrument.  2d. It would be a violation of the Statute of Frauds and Perjuries.

A judgment in an action of covenant, for the unpaid purchase-money against one of the vendees, and a levy and sale of the land upon proceedings on that judgment, would not divest the estate of the other vendee in the land.

Such judgment would not be a lien on the interest of the vendee, who was not a party to the suit.

THE ejectment in this case was brought in the Common Pleas of *Bedford county*, to November Term, 1854.

Verdict for plaintiff November 25, 1854.

The facts are somewhat complicated. The title to the land in dispute was in Ann Lehman. On the 7th of April, 1818, Ann Lehman and Abraham Lehman entered into articles of agreement for the sale of the land, together with another tract, with Philip Moser and John Exline. In consideration whereof, the said Moser and Exline bound themselves, *jointly*, to pay to the said Ann and Abraham the sum of $1000.

[Arnold v. Cessna.]

Upon these articles of agreement an action of covenant was brought to No. 84 of August Term, 1832, in which Ann and Abraham Lehman were plaintiffs, and Philip Moser and John Exline were defendants. Philip Moser died in 1835, and a judgment was obtained against John Exline, surviving covenantor, on the 10th of November, 1842, for $854.23, the balance of the purchase-money with interest due upon said agreement. To No. 197 of November Term, 1842, a *fi. fa.* was issued and the land in dispute levied upon, and a *vend. ex.* was issued to No. 72 January Term, 1843, by virtue of which the said land was sold to S. M. Barclay for $100, who, on the 13th of May, 1843, conveyed the same to the defendant, Peter Arnold, for the consideration of $500.

S. M. Barclay died on the 3d of January, 1852, and letters of administration, with the will annexed, were issued to Job Mann and J. E. Barclay.

Proceedings were commenced in the Orphans' Court by the heirs of Ann Lehman, deceased, under the direction of John Cessna, the plaintiff below, acting as their attorney, and carried on by him as administrator *de bonis non*, with the will annexed, of the said Ann Lehman against the representatives of S. M. Barclay, which resulted in making the estate of Barclay responsible to the heirs of Ann Lehman for the value of the land purchased by him at the sheriff's sale, being about $1100; which proceedings were affirmed in this Court at last May Term.

In 1853, and before the meeting of the auditors in said proceedings, the plaintiff had a conversation with William M. Hall, who had been employed by Moser's heirs to look after their interests, in which said plaintiff said that he also had been spoken to by some of the Mosers. Said plaintiff then employed Mr. Hall to assist in the prosecution of the claim of the heirs of Ann Lehman, and induced a delay of the assertion of the claim of the Mosers for the purpose of better insuring a recovery of the claim of Ann Lehman's heirs against the estate of Barclay.

The plaintiff claims the land under and by virtue of conveyances dated in 1854, from the heirs of Philip Moser, deceased.

On the trial of the cause, it was proved that Ann Lehman admitted to the witness that the land in dispute had been paid for by Philip Moser.

Moser went into possession in 1818, and continued in possession of the tract in dispute until his death in 1835, excepting three years, during which time it was leased by him to his brother. After his death, his widow and children continued in possession till 1843, when S. M. Barclay obtained the possession under his purchase at sheriff's sale, and sold to defendant, Arnold, who moved on the land and continues thereon.

Abraham Miller, a witness for plaintiff, proved the possession

[Arnold *v.* Cessna.]

of Moser of the tract in controversy, and after his death by his widow and children from 1818 down to the period possession was taken by Barclay.

Mary Exline, the widow of John Exline, proved that John Exline never lived on the tract; that she remembered well when Moser bought it; that her husband had bailed Moser when he bought, and that Moser had paid for the farm, and not Exline; that her husband had often told her this; that Moser went on to the land after he bought. Before he bought, he lived with her and her husband, and was their son-in-law; that she had seen Moser pay money on the land, but could not say how much.

Defendant excepted to the testimony of the above witnesses.

There was also evidence that Abraham Lehman, the son of Ann Lehman, and John Exline, the father-in-law of Moser, signed the agreement as sureties for the faithful performance of their principals.

On this statement of facts, the Court below charged the jury:—

" This is a controversy between the purchasers of the interests of Moser and Exline, as to what title they acquired by their respective purchases. This title as between Ann and Abraham Lehman and Moser and Exline remained unfinished; no deed ever passed, and by the conveyance to the plaintiff by the heirs of Moser, he took no better position in the contract than was held by the heirs through their father; and by the sheriff's sale Barclay became vested with the rights of John Exline. Neither can claim to be an innocent purchaser without notice. If they choose to buy without inquiry, they took the risk of the title, and if the jury believe that Philip Moser was the purchaser of this land from Ann Lehman—John Exline signing the agreement only as the surety of his son-in-law—and that Philip Moser paid the purchase-money to Ann Lehman in his lifetime, then the plaintiff must recover."

The counsel for plaintiff in error (defendant below) submitted the following points:—

1. That the action of covenant against Moser and Exline was well brought, they being joint covenantors, and that Moser having died before judgment, the further prosecution of the action could be maintained only against the surviving defendant.

2. That a sale of the land under a judgment, against the surviving covenantor, obtained in an action for the unpaid purchase-money, upon the articles of agreement, settles definitely the rights of all parties connected with, or having an interest in, the purchase, and passes the title of both covenantors, Moser and Exline, to the vendee of the sheriff.

3. That the interest of the plaintiff in this case is, at best, an equitable interest, and he cannot ask the Court to enforce his equity until he has done what equity requires at his hands, and therefore he cannot recover without having first paid or tendered

[Arnold v. Cessna.]

to pay the balance of the purchase-money due under the agreement.

4. That if the jury believe that the defendant in this case had no notice of the claim, now set up by the plaintiff, under the Mosers, and that there is nothing in the case that would put him upon such inquiry as would necessarily lead to a knowledge of that claim, he is an innocent purchaser, without notice, and is protected against the latent title, under which the plaintiff seeks to recover.

5. That the purchaser at sheriff's sale became the owner of Exline's interest in the land in dispute, and, as by the terms of the agreement Exline was a joint owner with Moser, the defendant, as alienee of the sheriff's vendee, became therefore entitled to at least one-half of the land—if the Court should be of opinion that he is not entitled to the whole—in the absence of full proof showing knowledge of the want of title in Exline.

6. That if the jury believe that the plaintiff in this case, being the attorney of the heirs of Ann Lehman, and administrator *de bonis non* of her estate, recovered, with a full knowledge that said Ann Lehman had been paid and satisfied, from the estate of Samuel M. Barclay, who was executor of said Ann Lehman and vendee of the sheriff of the land in dispute, the value of said land, and induced a delay of the assertion of the claim of the Mosers, for the purpose of better insuring a recovery of the claim of Ann Lehman's heirs against the estate of Barclay, equity will not permit him to recover as vendee of the Mosers against the defendant, an innocent purchaser, without notice of the title thus purposely concealed by the plaintiff.

To which the Court answered as follows:—

1st, 2d, and 5th. We have already said that the sale to Barclay upon the judgment obtained on the articles of agreement against Exline passed no greater interest to the sheriff's vendee than was in Exline at that time, and if the jury believe, from the evidence, that Exline was a principal—*prima facie* he was one—then the sale passed the one-half of the land to Barclay; but if Exline was the security only—it is not alleged that he paid any part of the consideration—and the purchase-money was paid by Moser to Ann Lehman in his lifetime, then the sale passed no title to Barclay.

3d. If the jury believe that Moser paid the purchase-money, then there was no necessity for a tender.

4th. Answered in the charge.

6th. Answered in the negative.

To this opinion and charge of the Court, the defendant excepts, and prays that a bill may be sealed; which is accordingly now done.

The following errors were assigned in this Court: 1st. The Court erred in admitting the evidence of Mary Exline and Abra-

[Arnold *v.* Cessna.]

ham Miller. 2d. The Court erred in their answer to the 1st, 2d, and 5th points of the defendant below. 3d. Also, in their answer to the 3d point. 4th. Also, in answer to the 4th point. 5th. Also, in answer to the 6th point.

*King*, for the plaintiff in error.—It was argued that the evidence of Mary Exline and Abraham Miller ought not to have been admitted, because, 1st, It contradicted a written agreement under seal; and, 2d, It was not accompanied with an offer to prove, or followed by proof that defendant, Arnold, had notice or knowledge of the relation of principal and surety alleged to have existed between Moser and Exline.

2d error. If two enter into a bond, and one die before judgment, the survivor will be charged alone: Reed *v.* Garon's Executors, 7 *Ser. & R.* 363; Gore *v.* Clark, 6 *Hill* 350.

But a judgment was obtained against the surviving covenantor for the balance of the purchase-money of lands agreed to be conveyed to Moser and him. How does this affect the survivor? He is made responsible for the purchase-money, and we say there is a trust resulting in his favour, conferring upon him the equitable interest of the lands purchased. He would have been entitled to a deed on payment of the judgment, and had, therefore, such an interest as could be levied upon and sold. The sheriff's vendee was in the same, if not a better, condition than Exline: Love *v.* Jones, 4 *Watts* 405.

The 5th, which was answered in connexion with the 1st and 2d, should have been explicitly answered. It asserts that Exline was a joint purchaser and owner with Moser. The contrary nowhere appears in a shape that would affect anybody with notice; and, if so, Arnold became the purchaser of the land without notice; and, therefore, is protected to the extent, at least, of half the land. He was not bound to look beyond the instrument by which Ann Lehman parted with her title. If, therefore, the defendant in error is entitled to recover at all, he will be limited to an undivided moiety.

3d error. There was error in the answer of the Court to this point:—"that, if the jury believed that Moser paid the purchase-money, there was no necessity for a tender." If the evidence of John Exline and A. Miller was inadmissible, then there was no evidence of the payment to go to the jury. The declarations of Exline and Ann Lehman, testified to by their witnesses, was long prior to the judgment in the action of covenant. Will these declarations be allowed to contradict the agreement and the fact established by the judgment? The knowledge of the witnesses was confined to themselves—the record was notice to all the world —so the agreement treats both tracts as one, and provides for the payment of a stipulated sum for both, and with this the judgment

corresponds—and it was also in proof that the value of the other tract was totally inadequate to satisfy the balance due on the agreement in 1842. There was, therefore, money due from Moser on account of the land in dispute, and this the plaintiff below was bound to pay, or to tender before he can recover; and the jury should have been so instructed.

4. Arnold was an innocent purchaser without notice. Moser's title was imperfect at best. The record showed he had not paid for the land—that judgment had been obtained against his co-covenantor, and the land sold under it; and, having no notice, he is entitled to protection.

5. The defendant in error prosecuted the Lehman claim against Barclay, in the double capacity of attorney and as administrator of Ann Lehman, knowing, at the time, of the outstanding claim of the Mosers. The prosecution of the latter claim was delayed, as is alleged, through his procurement, and thereby a larger amount was recovered for Lehman's estate of Barclay, than would have been recovered if the claim of the Mosers had been duly prosecuted. Barclay was the executor of Ann Lehman, at the time he purchased the land in controversy on the judgment against Exline, surviving covenantor in the purchase with Moser, for $100. He subsequently sold the land for $808.80 to Arnold, the defendant below, under covenants of general warranty, which sum he was charged with in the settlement of his administration amount, and paid with interest to the estate of Ann Lehman, of which the plaintiff below was then the administrator *de bonis non*. In the mean time, and pending the controversy, the plaintiff below bought out the title of Moser's heirs to the land, and brought this ejectment afoot, having obtained the judgment against Barclay's estate for Lehman's estate. Is it consistent with public policy, and due administration of justice, that he should recover? Rush v. Cavenaugh, 2 *Barr* 197.

Barclay's estate has paid the whole sum received of Arnold for the land to Lehman's estate; if plaintiff recovers, his estate will be liable to an action on the covenant of general warranty to Arnold, should the latter be evicted.

*Cessna*, for defendant in error.—The plaintiff in error mistakes in saying that the proceedings against Barclay's estate were carried on by defendant in error as administrator. He was employed by the heirs as attorney, and only administered at a late period, when an administrator was necessary to effect a distribution.

1. As to the admission of the evidence objected to: There was no contradiction of the deed. See Mann's Appeal, decided at May Term, 1854, and the opinion of Lowrie, Justice.

Arnold stands in the place of Barclay. The purchaser of an inchoate title at sheriff's sale takes the title of the defendant and

nothing more. His alienee is in no better condition. See the case of Morrison *et al. v.* Funk, decided at May Term, 1854 ; 2 *Rawle* 188 ; 7 *Barr* 165 ; 7 *Watts* 167 ; 8 *Barr* 187.

No one denies the first point. Barclay, as executor of Lehman, had a remedy, by ejectment, against Moser, although he had none on the covenant. It is not true, as plaintiff asserts, that Exline would have been entitled to a deed for the land on payment of the judgment ; nor is it true that there was a resulting trust in favour of Exline. From what could it result ? From the fact that Moser had all the money and that Exline had nothing ?

2. The second point the Court below properly refused. Moser's heirs could not be affected by a sale of Exline's interest. Moser died in 1835. The judgment was taken in 1842 ; not against Moser, his administrators, or his heirs. The case Torr *v.* Jones, 4 *Watts* 465, is not disputed ; but there the judgment was recovered by the vendor against the vendee. There was a union of the legal and equitable interests, and by this arrangement the parties to the *record* did definitively settle their relations. In this case there was no such proceeding ; there is no disclosure of the relation between the vendors, nor of that of the vendees. The relation between the vendors and vendees only is declared. The true relation between Moser and Exline is disclosed by the evidence. Moser owning the equitable title, there was no union of the legal and equitable estates by the sale of Exline's interest in the land ; no definitive settlement of the rights of the parties, as in the case cited, which is not, therefore, in point. The case is, as stated in the Court below, "a controversy between Moser and Exline." Plaintiff in error is entitled to Exline's interest ; defendant in error to that of Moser. The jury have determined their relative value. By the decision of the Court, in May last, Barclay, in the purchase, took the risk upon himself. Arnold is in no better position ; and, aside from this, it is plain that Arnold had notice. The only title Barclay could show in Exline was the agreement of April, 1818. Did that show to Arnold what share was Moser's? what Exline's ? On the contrary, the record on which the land was sold showed that Moser paid all the money that ever was paid, and there was enough upon the record to put any man upon inquiry.

3. The third error assumes that the title of defendant in error was equitable, and requires that a tender should be made to entitle him to recover. The loss of time, thirty-seven years, and continued possession for twenty-seven years, and the evidence of payment, as proved by witnesses, raise the presumption of payment so as to dispense with a tender. And this is not rebutted by the judgment, for the reasons that the articles of agreement embraced two tracts, and Moser was no party to the judgment.

But the rule requiring a tender is confined to actions between

[Arnold *v.* Cessna.]

the vendor and vendee; either may recover against the other or against a stranger without tender: 7 *Watts* 43; 4 *Barr* 482; 2 *Harris* 249.

4. The fourth error assigned is founded on a misapprehension of the facts of the case. This is, emphatically, a controversy between Moser and Exline; their alienees occupy the same position that they would occupy if now present.

5. As to the conduct of defendant as attorney at law: 1. In increasing the delay of Moser's heirs in the prosecution of their claim. 2. In the prosecution of an unjust judgment. Was this an unjust judgment? Who says so? The representatives of J. Barclay. Who obtained it? Who was attorney in 1832? Who executor of one plaintiff in 1833? Who the assignee of the other plaintiff in 1811? Who issued execution, controlled the levy and sale, and became the purchaser? Surely Mr. Barclay should not complain that we have been collecting the judgment he took so much pains to obtain. If the purchase-money of this land was all paid, no one ever told this to the defendant in error. He knew nothing of this till the day Miller's deposition was taken.

But if he had known that this land had been paid for, the agreement embraced two tracts; the other was not paid for. For this balance Barclay obtained the judgment. Barclay was executor from 1833 to 1853; and the prosecution of Moser's claim five years ago would have had no effect upon his liability in the former action. Between him and Lehman's heirs it could make no difference. If he bought and sold the land, and received the money, he was liable. If he did not, then the debt was lost through his gross negligence as executor. So far as can be now seen, there was a valid claim against Moser and Exline, to the amount of the judgment for the balance due on another tract. Why was this claim permitted to slumber for twenty years? Barclay was bound to collect it from Moser or pay it himself. The whole case was on record and freely discussed on a former trial in the Court below, before auditors, and in this Court; in all of which defendant in error took the ground that Abraham Lehman was only bail for Ann, and that Exline was only bail for Moser, and so proved it to the satisfaction of Court and auditors, and before a jury in a feigned issue; and all this before defendant in error bought a single share of Moser's heirs.

When a trustee purchases land at his own sale, he cannot retain it. Barclay denied the trust, claimed adversely, and took the risk of the title. If he had conveyed to Lehman's heirs, as he should have done, they would have been entitled to just what was finally decreed to them by this Court.

Our purchases from Moser's heirs were made openly, and the deeds recorded as they were made; one of them by sheriff's sale.

VOL. I.—6

[Arnold *v.* Cessna.]

Why did not plaintiff in error buy? Because he denied Moser's title, and does so yet.

The ejectment was delayed, not for the purpose of securing judgment in the other suit, but until the defendant in error had obtained the entire title, when it was immediately brought.

The opinion of the Court was delivered by

KNOX, J.—This was an action of ejectment. Previous to April, 1818, the title to the land in dispute was in Ann Lehman. On the 7th of April, A. D. 1818, Ann Lehman and her son, Abraham Lehman, sold by articles of agreement to Philip Moser and John Exline two tracts of land—the one for which this action was brought, and a mountain tract—for the consideration of one thousand dollars.

In 1823, an action of covenant was brought by Ann and Abraham Lehman against Philip Moser and John Exline, to recover the unpaid purchase-money. Moser died in 1835, and in November, A. D. 1842, a judgment was obtained against Exline, in the action of covenant, for the sum of $854.23. Upon this judgment the tract in dispute was sold in January, 1843, to Samuel M. Barclay, the executor of Ann Lehman, who conveyed it to the defendant Arnold in May, 1843. Philip Moser went into possession in 1818, and remained until his death in 1835, leaving a widow and children, who continued the possession until 1844; since which time the tract has been occupied by the defendant, under his purchase from Barclay. The plaintiff has the title of the heirs of Philip Moser.

The important point in the case is the effect of the sheriff's sale upon the judgment obtained in the action of covenant. The plaintiff denies that this judgment was a lien upon the land, averring that the purchase was really for the benefit of Moser, and that Exline was a party to the articles of agreement, not as purchaser, but merely as security for the payment of the purchase-money. He further alleges that the purchase-money for the tract in dispute had been paid by Moser to Ann Lehman in her lifetime. The defendant's position is, that the judgment, although against Exline alone, having been recovered in a suit brought on the articles of agreement for the sale of the land, was a lien upon the whole equity outstanding, and that the sale extinguished all the interest which Moser and Exline, or either of them, had in the land. The Court of Common Pleas permitted the plaintiff to prove by parol testimony that the purchase was made for the benefit of Moser, that Exline signed the agreement as surety, and that Ann Lehman had said in her lifetime that the tract in dispute had been fully paid for by Moser; and instructed the jury that if they found these facts their verdict should be for the plaintiff.

By the articles of agreement an equitable title passed to Philip

[Arnold *v.* Cessna.]

Moser and John Exline, as tenants in common, with the right to demand a conveyance of the legal title upon the payment of the purchase-money. The equitable title of Exline could not be destroyed by parol evidence that he was a surety instead of a purchaser, first, because this evidence could not gainsay the written instrument under seal, and, second, because it would be a violation of the statute of frauds and perjuries to permit one who has purchased by writing jointly with another to prove by parol that his co-purchaser has no interest in the purchase. The rule is well settled in Pennsylvania that an equitable title to land is within the statute of frauds: Murphy *v.* Hubert, 7 *Barr* 423. And it is equally well settled that a transfer from one tenant in common to another can only be by writing, and that the possession of the one is the possession of both: Galbreath *v.* Galbreath, 5 *Watts* 146. At the time when the action of covenant was commenced, as well as when the judgment was entered against Exline as between the parties to the agreement, Exline was a tenant in common as to one-half of the equitable interest in the land in dispute, and the judgment against him was unquestionably a lien upon this interest; but no case goes so far as to hold that a judgment obtained against one tenant in common, in an action of covenant brought on articles of agreement for the sale of land against two, is a lien upon the interest of the deceased obligor or covenantor. The rule would doubtless be otherwise as to joint tenants, as the entire interest or estate would pass to the survivor, and be bound by the lien of a judgment obtained against him alone; but the real estate of a deceased tenant in common, whether held by articles of agreement or by deed of conveyance, passes upon his death directly to his heirs or devisees, and cannot be encumbered by a judgment against another where neither the heir, devisee, or personal representative is made a party. The cases cited by the plaintiff in error do not sustain his position, that the judgment bound the interest of Moser as well as that of Exline. Love *v.* Jones, Day *v.* Lowrie, and Harbach *v.* Riley were all cases where the action was brought and the judgment had against the vendee; and they simply decide that a sale upon such a judgment passes to the purchaser the entire estate, legal and equitable; but in nothing that is said in either case is there warrant for the position here assumed.

As Mr. Barclay, the purchaser, represented the holder of the legal title, Ann Lehman, and as the judgment against Exline was a lien upon the one-half of the outstanding equity, a sale upon this judgment vested the entire title, legal and equitable, in the purchaser, to a moiety of the property sold; and, as to this moiety, the defendant has a perfect title; and, as to the other half, the equitable interest still remains in the heirs of Philip Moser, or the plaintiff who claims under them, with the right to demand

[Arnold *v.* Cessna.]

a conveyance, or recover the possession of the undivided moiety, upon paying or offering to pay the one-half of the purchase-money, if this has not already been paid.

As the sale upon the judgment against Exline united the equitable interest in an undivided moiety of the estate with the legal title, it left the other moiety free from the one-half of the purchase-money, so that if Moser in his lifetime, or his heirs since his death, has paid upon this purchase five hundred dollars and its interest, the plaintiff is entitled to recover in this action the one undivided half of the land in dispute. Taking the amount recovered in the judgment against Exline as the true amount then due, it would seem that more than one-half had been paid, for the judgment is for a sum considerably less than the one-half of the purchase-money, and its interest from the date of·the contract, in 1818, to the rendition of the judgment in 1842; but, as this judgment is not conclusive between the parties to the present suit, as to the amount then due, the question is still open for inquiry; and, if it should be found upon another trial that Moser, or those claiming under him, had not paid the one-half of the purchase-money, a conditional verdict should be given in favour of the plaintiff for the one undivided moiety of the land, upon his paying to the defendant within such time as the jury should fix any residue of the one-half of the purchase-money, and interest, after deducting what has already been paid by Moser, the defendant, to be entitled to the money so paid only upon conveying to the plaintiff the legal title to the one-half of the land. The conveyance should be made by the defendant, because the legal title passed to the whole estate from Ann Lehman to Samuel M. Barclay, by virtue of the sheriff's sale and the subsequent proceedings against the estate of Mr. Barclay by the estate of Mrs. Lehman; and being so in Mr. Barclay, it would enure to the benefit of his vendee, the defendant in this suit. If, however, the jury should find, as they probably will, upon a second trial, that Moser had paid his part of the purchase-money, a verdict in favour of the plaintiff for the undivided half of the tract is all that the case requires.

It is unnecessary to pass upon the assignments of error more particularly than we have already done; but, to prevent misconstruction, we will add that there is nothing in the view of the case we have taken, inconsistent with the decision of this Court in Mann's Appeal, not yet reported. There we permitted the representatives of Ann Lehman to show that Abraham Lehman had no interest in the purchase-money due on the articles of agreement with Moser and Exline, although he was, on the face of the agreement, one of the vendors; but this was in accordance with the legal title which was in the name of Ann Lehman alone; here the proposition was to show, in direct contradiction to the written agreement, that Exline was not a purchaser, but a surety, and that too,

[Arnold *v.* Céssna.]

to affect the title of the defendant, without proof that he had notice of any relation between the parties other than what appeared upon the face of the agreement. The difference between this case and Mann's Appeal is manifest, and we only notice it to avoid the conjecture that we have overlooked our former decision.

There is nothing in the allegation that the plaintiff below is estopped from claiming title to the land in controversy, under the heirs of Moser, because, as attorney for Ann Lehman's estate, he recovered its value from the estate of Samuel M. Barclay, deceased.

Judgment reversed and *venire de novo* awarded.